IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS AIELLO, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| | : | |
| v. | : | No. 2:20-cv-06032-CFK |
| | : | |
| | : | |
| CHESTER DOWNS, LLC d/b/a HARRAH'S | : | |
| PHILADELPHIA CASINO AND RACETRACK, | : | |
| *Defendant,* | : | |

<u>MEMORANDUM</u>

**Kenney, J.**                                                                                                        **July 15, 2021**

      This suit arises from a slip and fall at Harrah's Philadelphia Casino and Racetrack, which placed the then-seventy-three-year-old Plaintiff Francis Aiello in the hospital with serious injuries including a fractured nose, ribs, various bumps and bruises, and a brain bleed. Plaintiff avers that Harrah's breached its duty of care owed to business invitees insofar as it failed to remediate liquid on the floor at the base of the escalator, which he alleges caused his fall. Defendant Harrah's moves for summary judgment on the grounds that Plaintiff failed to prove there actually was a hazardous condition at the base of the escalator, and even if there was, Plaintiff has offered no evidence Harrah's had sufficient notice to be liable.

    **I. FACTUAL BACKGROUND**

      Francis Aiello ("Plaintiff") is an army veteran, cancer survivor, devoted husband, and proud father and grandfather. ECF No. 18, Ex. E Aiello Deposition (Aiello Depo.) at 11:1-22. Defendant Chester Downs Marina, LLC d/b/a Harrah's Philadelphia Casino and Racetrack ("Harrah's") is held by Caesars Holding, Inc. ("Caesars") as sole member. Def's Notice of Removal at 3. Caesars is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located in Nevada. <u>Id.</u> Plaintiff is a resident of Alden,

1

Pennsylvania, and initially filed this action in the Delaware County Court of Common Pleas. Id. at 1-2. On or about December 1, 2020, Harrah's removed the case to this Court under diversity of citizenship pursuant to 28 U.S.C. § 1332(a).[1] Id.

On September 21, 2019, Plaintiff and his wife went to Harrah's—as they did most Saturday evenings—to meet friends, socialize, and gamble. Aiello Depo. at 21:4-14. After dinner and a few hours of gambling, Plaintiff and his wife decided to head home between 8 p.m. and 9 p.m. Id. at 22:12-13. As Plaintiff walked through the atrium toward his car, he fell backward as his foot hit the metal plate just prior to the escalator. Id. at 25:6-8. Plaintiff said he was about to descend the escalator when "the next thing I knew, I was getting up off the floor . . . looking down at blood." Id. at 24:7-10. Initially, Plaintiff testified he did not know what caused him to fall, nor did he recall which direction he fell, and initially told a security guard his shoes made him fall—though Plaintiff later said he does not recall saying this. Id. at 28:7-9; 32:13. The relevant portion of Plaintiff's deposition reads:

> Q: Okay. After you got up off the floor, sir, did you look down at the floor?
>
> A: I guess. I saw the blood.
>
> Q: Did you see anything else on the floor when you looked down?
>
> A: No.
>
> Q: And you said you didn't know what caused you to fall, correct, sir?
>
> A: Correct.

Id. at 28:7-9; 32:13. Responding to Harrah's interrogatories, answered that he felt a wetness on his pants—though he could not tell what kind of liquid made his pants wet—and therefore

---

[1] Because the Parties are completely diverse and the amount in controversy exceeds $75,000, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

assumed the floor was wet. See Pl's Resp. Int. 12. However, Plaintiff said he saw blood on the floor, but nothing else. Id. at 28:4-6. Michelle Aiello, the only witness and Plaintiff's wife, did not see him fall and did not know what caused it, either. Id. at 29: 8-13. Though the fall occurred in the crowded atrium, Plaintiff had not seen anyone else slip and fall at the same spot. Id. at 36:15-20.

As a result of the accident, Plaintiff—then seventy-three years old—suffered a fractured nose, two fractured ribs, two blood spots on the brain, and various bumps and bruises. Id. at 28-29:24-1. After the fall, security helped Plaintiff and offered him a wheelchair. Id. at 30:5-14. Plaintiff initially declined to go to the hospital, preferring to just go home, but changed his mind after being told he looked "beat up." Id. at 30:13-14. He left Harrah's in an ambulance and spent the night in the hospital. Id. at 40:2-9. Due to his brain injuries, Plaintiff visited a neurologist two weeks after the fall. Id. at 47:13-15.

Harrah's has an extensive security team, with officers assigned at the entrance, different zones of the casino floor, the racing floor, and outside the casino. Moore Depo. at 37:7-14. While no security officer is specifically assigned to the atrium, extra security personnel are assigned as "rovers" and respond to the needs of the entire casino. Id. at 38:13-19. All Harrah's employees must notify the proper department anytime a beverage or liquid is spilled on the ground. Hennigan Depo. at 16:13-16. Michelle Hennigan was one of the first Harrah's employees to respond to the accident, and she did not recall seeing anything on the floor. Id. at 40:2-6. Furthermore, employees were required to photograph the alleged area where Plaintiff slipped, and document Plaintiff's footwear; those photos did not reveal any hazardous liquid. Moore Depo. at 43:4-13. There was no indication of water, debris, or any other hazard on the ground at the time of the incident. Id. at 47:1-4.

3

Harrah's surveillance team also had an unofficial policy of saving an hour's worth of footage prior to any accident that occurred on the premises, although that did not happen in this case. See Shreckengost Depo. at 21:2-8:

> Q: All right. And so I think you said it was Harrah's policy and procedure that when there's an incident, you're supposed to keep one hour of the footage prior to the incident?
>
> A: Yeah, it's not specifically a policy and procedure. It's not written anywhere in my policies and procedures, it's just something that we decided to do for risk management from Lawrence. And it was basically a request when I first got on property to – I don't remember when, but to assist in matters like this, just in case anybody needed to, you know, take a look at, hey, what happened prior, or ask any questions.

Id. at 24:7-19. Usually, the video is recorded and saved to a drive, but in this case—according to Director of Surveillance Shreckengost—human error prevented the film's preservation. Id. at 22:1-10. Although the full hour prior is lost, Harrah's did produce footage that ranges from roughly a minute prior to Plaintiff's fall up to his departure from the casino. Moore Depo. at 18:5-23. Additionally, the surveillance report was written in such a way that the footage from an hour prior to the accident may not have even been viewed at all. Shreckengost Depo. at 40:10-17. Without saving the video, cameras will record for seven or thirty days before being recorded over. Id. at 22:14-19. In the atrium, the cameras re-recorded after seven days. Id. at 24:2-6.

At issue here is whether there was a hazardous condition on the metal plate at the base of the escalator, and if there was, did Harrah's have adequate notice, either actual or constructive, of the hazard prior to Plaintiff's accident.

## II. PROCEDURAL HISTORY

Plaintiff filed a complaint against Harrah's asserting claims for negligence on October 28, 2020 in the Delaware County Court of Common Pleas. ECF No. 1, Ex. "A." On or about December 1, 2021, the case was removed to federal court based on diversity jurisdiction. ECF No. 1. On January 13, 2021, Harrah's served Requests for Plaintiff's Answers to Interrogatories and Requests for the Production of Documents to Plaintiff. In February 2020, Plaintiff responded to Harrah's Interrogatories. On June 2, 2021, Harrah's filed a Motion for Summary Judgment. ECF No. 18. On June 16, 2021, Plaintiff filed a Response to Harrah's Motion for Summary Judgment. ECF No. 19. On June 22, 2021, Harrah's replied to Plaintiff's Opposition to Harrah's Motion for Summary Judgment. ECF No. 20.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party shows there is "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In reaching this decision, the Court must determine whether the "pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact." Favata v. Seidel, 511 Fed. App'x 155, 158 (3d Cir. 2013). A dispute is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For a fact to be "material," it must have the "potential to alter the case." Favata, 511 Fed. App'x at 158. Once the moving party "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur, 601 F.3d at 216).

When deciding a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009)). The Court's job is not to resolve the disputed issues of fact, but rather to determine whether any factual issues exist. Anderson, 447 U.S. at 247-49. If a factual issue arises which cannot be resolved without a credibility determination, the Court must credit the nonmoving party's evidence over that presented by the moving party. Id. at 255. If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome, summary judgment must be awarded in favor of the moving party. Id. at 250.

**IV. ANALYSIS**

Harrah's argues it is entitled to summary judgment on Plaintiff's negligence claim because (1) Plaintiff has failed to provide evidence a dangerous condition existed, and (2) even if there was a dangerous condition, Defendant did not breach its duty of care because Defendant lacked actual or constructive notice of the alleged hazard. Def's Mot. at 10. ECF 18.

**A. Premises Liability Under Pennsylvania Law**

Under Pennsylvania Law,[2] the elements of a negligence cause of action are: (1) a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another. Bowman v. Wal-Mart Stores East, LP,

---

[2] Because jurisdiction is based on diversity of citizenship, the Court applies the substantive law of Pennsylvania. Sheridan v. NGK Metals Corp., 609 F.3d 239, 253 (3d Cir. 2010).

No. 14-3182, 2015 WL 568570, at *3 (E.D. Pa. Feb 10, 2015) (citing Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005)).

When the case is based on premises liability, the standard of care depends on whether the person entering the establishment was a trespasser, licensee, or invitee. McDowell v. Moran Foods, LLC, 680 Fed. App'x 72, 72 (3d Cir. 2017) (citing Carrender v. Fitterer, 469 A.2d 120, 123 (Pa. 1983)). A business invitee is "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Falcone v. Speedway LLC, No. 14-2188, 2017 WL 220326, at *2 (E.D. Pa. Jan 19, 2017) (quoting Charlie v. Erie Ins Exch., 100 A.3d 244, 253 (Pa. Super Ct. 2014)). A customer is a business invitee. Pace v. Wal-Mart Stores East, LP, 337 F. Supp. 3d 513, 518 (E.D. Pa. 2018).

A landowner owes the highest duty of care to an invitee. Falcone, 2017 WL 220326, at *2 (citing Traux v. Roulhac, 126 A.3d 991, 997 (Pa. Super Ct. 2015)). A landowner must protect a business invitee not only from known dangers, but also from "dangers that might be discoverable with reasonable care." Id. Additionally, a possessor of land is subject to liability for harm caused by his invitees by a condition on the land if, but only if, he (1) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such activities; (2) should expect they will not discover or realize the danger, or will fail to protect themselves from it; and (3) fails to exercise reasonable care to protect them against danger. King v. Rocktenn CP, LLC, 643 Fed. App'x 180, 182 (3d Cir. 2016) (quoting Atkins v. Urban Redevelopment Auth. of Pittsburgh, 414 A.2d 100, 103-04 (Pa. 1980) (quoting Restatement (Second) of Torts § 343 (1965)).

Plaintiffs generally have a difficult task proving slip and fall cases that involve foreign substances on the floor of a store. David by Berkeley v. Pueblo Supermarket of St. Thomas, 740

F.2d 230, 233-34 (3d Cir. 1984). In such cases, the main issues involve: (1) was there a substance on the floor? (2) What notice, either actual or constructive, did the employees or the management have of this particular condition which involves "an unreasonable risk of harm" to the business invitees? (3) Absent direct testimony proving actual notice, was the foreign substance on the floor long enough to give management or employees constructive notice of this potential unreasonable risk of harm? Id. (citing Restatement (Second) of Torts § 343 (1965)).

Here, Plaintiff presents insufficient evidence—even when viewed in a light most favorable to Plaintiff—to raise a genuine dispute as to whether there was a foreign substance at the base of the escalator, and thus fails to satisfy his burden of proof that a hazardous condition existed. First, in his deposition, Plaintiff testified that he did not see any foreign substances in the area he fell, and further testified he did not know what caused him to fall:

> Q: Okay. Alright. What do you believe caused you to fall on September 21st, 2019?
>
> A: I don't know.

See relevant portions of Aiello Depo. at 24:1-3.

> Q: Okay. After you got up off the floor, sir, did you look down at the floor?
>
> A: I guess. I saw the blood.
>
> Q: Did you see anything else on the floor when you looked down?
>
> A: No.
>
> Q: And you said you didn't know what caused you to fall, correct, sir?
>
> A: Correct.

See Aiello Depo. at 28:1-9. The mere happening of an accident does not charge the defendant with liability; rather, it is necessary for the Plaintiff to prove a specific fault or at least an

inference of negligence. See Angelellli v. Albert I. Mansmann Co., 77 A.2d 678, 680 (Pa. Super. 1951).

Second, the Court is unpersuaded by Plaintiff's argument a jury could infer the existence of a dangerous condition because his pants were dry prior to the fall and wet afterward. The mere existence of a scintilla of evidence in support of the Plaintiff's position is insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff. Wood v. Speedway, LLC, No. 2:17-cv-1408, 2019 WL 2248671, at *3 (W.D. Pa. May 24, 2019). Although elements of a cause of action may be established by drawing inferences from circumstantial evidence, these inferences must be reasonable and logical. Fedorczyk v. Caribbean Cruise Lines, 82 F.3d 69, 75 (3d Cir. 1996). A Court may not submit the issue of causation to the jury "if it would require guessing or speculation to determine cause." Smith v. Bell Tel Co. of Pa., 397 Pa. 134, 153 (Pa. 1959) ("We have said many times that the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based.") "A mere possibility of causation is not enough." Id. at 75.

For example, in Wood, the plaintiff and the defendant disagreed as to whether a dangerous condition existed. Id. at *3. The plaintiff testified in her deposition that she felt droplets on the floor, and she had a wet spot on her pants following her fall. Id. The court held that, based solely on the plaintiff's circumstantial evidence, a fair-minded jury could not reasonably conclude the floor was dangerously wet before the plaintiff fell. Id. In Wood, no one saw any wetness on the floor, nor did the surveillance footage reveal any wetness on the floor. Id. As for the wet spot on the plaintiff's pants, it was only speculative that it came from the ground and not the drink she was holding. Id. Therefore, the court held the defendant was entitled to summary judgment. Id.

9

Similarly, neither Plaintiff nor his wife observed any wetness, and the photographs and post-accident reports do not mention any spill or hazardous condition, either. See Aiello Depo. at 28:7-9. Lawrence Moore, Harrah's Security and Risk Manager, testified no defective, dangerous, or hazardous condition was found following an inspection of the scene. Moore Depo at 47:1-4. The post-accident reports and photos do not reveal any liquid, other than Plaintiff's blood, tracked down the base of the escalator. Id. Additionally, Plaintiff initially said his shoes made him fall, and during his deposition, he then said he did not know what caused the fall. Id. at 32:16-24. Plaintiff did not mention wet pants at all in his deposition, and his attorney's questioning then only referred to injuries and did not inquire into the mechanism of the fall. See Aiello Depo. at 72:1-5. His attorney also did not revisit Plaintiff's clear description given to Defense counsel. Id. At only one instance did he mention anything regarding feeling wetness, which was in his answers to Interrogatories 12 and 13, referring to his pants being wet after the fall and stating "Plaintiff believes he slipped on some type of liquid given that his pants were wet after the fall." See Pl's Resp. Int. 12 and 13. Like Wood, to say this wetness came from an accumulation of liquid on the floor is speculative. Here, the wetness on Plaintiff's pants could have been a variety of substances. There was an abundance of blood photographed in the post-accident report; or, Plaintiff could have spilled a drink during dinner. Hennigan Depo. at 30:1-4; Aiello Depo. at 37:8-23. Regardless, without more evidence, the inference the floor was wet because Plaintiff's pants were wet it is too speculative, and thus insufficient to preclude summary judgment.

    i. **Actual Notice**

Plaintiff has failed to show a genuine dispute as to whether a dangerous condition existed, but even if he had, Plaintiff has also not produced any evidence Harrah's had notice of

the condition. Plaintiff and his wife testified that they were unaware of any other complaints or falls in the same location as Plaintiff's. Aiello Depo. at 29:8-13. There is no allegation or evidence that Harrah's had actual notice of the spill or that Harrah's created the spill. Therefore, the issue is whether Plaintiff has presented evidence sufficient for a reasonable jury to conclude that Harrah's had constructive notice.

    ii.    **Constructive Notice**

Plaintiff fails to prove constructive notice. Plaintiff alleges Harrah's spoliated evidence that would have established not only the existence of a hazardous condition, but also would have established actual or constructive notice. ECF No. 19 at 14-15. Additionally, Plaintiff argues Harrah's failure to properly police and inspect the atrium prevents summary judgment in its favor. Id. at 13.

Courts rely on a number of factors to determine constructive notice, including: "the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonably prudent person, had to remedy it." Hagan v. Caldor Dep't Stores, Inc, No. 89-7810, 1991 WL 8429, at *4 (E.D. Pa. Jan 28, 1991). Normally, the "evaluation of these factors is within the province of the jury." Id. Nonetheless, where the evidence adduced requires the jury to resort to "conjecture, guess or suspicion," the determination must be made by the court. Lanni v. Pa R.R. Co., 88 A.2d 887, 889 (1952).

Constructive notice "requires proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant should have known of its presence." Hower v. Wal-Mart Stores, Inc., No. Civ. A. 08-1736, 2009 WL 1688474, at *3 (E.D. Pa. June 16, 2009). In Hower, the plaintiff argued the defendant's failure to make a safety sweep amounted to

11

constructive notice of a spill, and specifically emphasized that the employees "did not know when the last time prior to the fall the aisle had been inspected." Id. at *4. The court disagreed, and noted the store was busy and with a "good volume" of customers inside at the time of the accident. Id. at *5. Given the plaintiff slipped in the middle of the aisle, and there was no evidence of footprints or tracks, the court could only conclude the spill was fresh. Id. Furthermore, the court held that the defendant's own internal policies were not equivalent to its duty of care, especially when those policies offer guests greater protection. Id. More specifically, *lack of evidence* that the defendant had inspected the aisle was not *proof* the defendant did not inspect it. Id. Finally—and most importantly—the court held the failure to perform a safety sweep said nothing about how long the spill was present. Id; See also Kujawski v. Wal-Mart Stores, Inc., No. 06-4120, 2007 WL 2791838, at *3 (E.D. Pa. Sept. 25, 2007) (granting summary judgment after no evidence was offered as to how the spill happened or how long the spill was on the floor prior to the accident, and noting the evidence regarding the physical appearance of the puddle and its surrounding area allows no inference other than that the puddle was fresh).

Here, Plaintiff has provided no evidence that even if there was a spill, it was anything other than fresh. Plaintiff fell in the atrium—one of the casino's main arteries—at around 9 p.m. on a Saturday night. Aiello Depo. at 36:18-20. Like in Hower, where the Wal-Mart was replete with mid-day shoppers, there was a "high-volume" of customers in and around the atrium at the time of the fall. Id. Additionally, Plaintiff fell at the base of the only escalator going down. Aiello Depo. at 24:6-11. Therefore, even if there was spill, given the level of traffic in that area of the casino on a Saturday night, it is likely it would have been noticed by other patrons and reported quickly. Also, if there was, for example, a spill caused by another patron, it is impossible to make any finding as to how long the spill was there since it could have been

caused by any of the many people who passed through the area just prior to Plaintiff and his wife. Without any evidence in the record at this point, there is no other inference than that this hypothetical spill was fresh.

Second, Plaintiff incorrectly equates lack of evidence of inspection with proof that the area was not adequately inspected, and his reliance on Kavanaugh is unpersuasive. Like Hower, where the court found that although one employee may not have inspected the aisle, it does not mean no one did. Similarly, just because a security official was not specifically watching the escalators in the atrium does not mean the area went uninspected. The court in Hower noted that safety inspections were a team effort; Harrah's uses a similar system where all Harrah's employees must report hazardous conditions. Id; See also Hennigan Depo. at 17:7-10. Thus, just because a security officer was not specifically in charge of the atrium's escalators does not mean the area was unattended. In fact, given that the atrium is the thruway between the parking lot and the main casino area, it is likely numerous employees—who all have the duty to report hazardous conditions—passed through the escalator area prior to the accident. To proceed any further would present a jury with a decision they could only base on speculation. Thus, not only did Plaintiff fail to provide evidence of the existence of a hazardous condition, but he also failed to provide evidence that Harrah's had notice of that condition.

### B. Spoliation

Plaintiff attempts to overcome Harrah's summary judgment motion by arguing for a spoliation inference. The record indicates that Harrah's had working security cameras in the atrium, and it was common practice to save an hour's worth of footage prior to any slip and fall. Shreckengost Depo. at 21:2-8. However, the only surveillance footage preserved showed just a minute prior to Plaintiff's fall, and the aftermath. Id. Additionally, Plaintiff avers Harrah's failed

to properly investigate the incident, and thus robbed Plaintiff of contemporaneous statements of employees who were in the area at the time of Plaintiff's fall. Plaintiff charges that he has been stripped of the opportunity to determine how and when the defect was created and how many—if any—employees walked by the condition prior to the Plaintiff's fall. ECF No. 19 at 11-12.

Courts may impose a sanction for destruction of evidence where: (1) the evidence was within the alleged spoliator's control; (2) the evidence was relevant to the claims and defenses in the case; (3) there has been actual suppression or withholding of the evidence; and (4) it was reasonably foreseeable that the evidence would be discoverable. Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012). The party seeking a spoliation sanction bears the burden of proving these factors. Malibu Media, LLC v. Doe, No.14-1280, 2015 WL 412855, at *4 (E.D. Pa Feb 2, 2015). Further, the finding of bad faith is "pivotal to a spoliation determination" and is decided under the third factor of actual suppression or withholding. Bull, 665 F.3d at 79. Bad faith may be inferred from circumstantial evidence. E.g., Orion Drilling Co., LLC v. EQT Production Co., 826 Fed App'x 204, 217 (3d Cir. 2020).

For the Court to even entertain sanctions or some adverse inference due to spoliation, there must be actual evidence Harrah's destroyed, suppressed, or withheld evidence from Plaintiff. See Felix v. GMS, Zallie Holdings, Inc., 827 F. Supp. 2d 430, 442 (E.D. Pa. 2011) (citing Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995) ("It must appear that there has been an actual suppression or withholding of the evidence. No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.").

A finding of bad faith is pivotal to a spoliation determination. Bull, 665 F.3d at 77. Ordinary negligence is not sufficient to establish spoliation. First Senior Fin. Grp. LLC v. Watchdog, No. 12-1247, 2014 WL 1327584, at *7 (E.D. Pa. Apr. 3, 2014). The party asserting spoliation must prove that evidence was intentionally withheld, altered, or destroyed. Id. Thus, no unfavorable inference of spoliation arises if the evidence was lost, accidentally destroyed, or where the failure to produce it is otherwise properly accounted for. Id. In First Senior Financial Group, the court explained the standard further:

> After the Third Circuit's decision in Bull, courts within this Circuit have sought to distinguish conduct constituting bad faith from conduct equivalent to mere accidental destruction or loss of evidence. Typically, the destruction of evidence by an automated system pursuant to an even-handed policy, such as the re-recording of videotapes in the usual course of business, does not constitute bad faith. In these situations, the lack of bad faith stems in part from the fact that the party controlling the evidence had no reason to believe that it would be required in litigation. Similarly, imperfect measures to fail to preserve some evidence from destruction by an automated system do not establish bad faith if active efforts were made to preserve other evidence.
>
> On the other hand, a "reckless disregard for the consequences of an intentional and conscious destruction of evidence, previously specially preserved for purposes of subsequent litigation, at a time when litigation is necessarily foreseeable," may constitute bad faith. Additionally, a party's obfuscation or lying can show that she is acting in bad faith.

First Senior Fin. Grp. LLC v. Watchdog, No. 12-1247, 2014 WL 1327584, at *7 (E.D. Pa. Apr. 3, 2014). Whether or not litigation is "reasonably foreseeable" is a flexible standard, and courts exercise discretion in a spoliation inquiry. Harrell v. Pathmark, No. 14-5260, 2015 WL 803076, at *4 (E.D. Pa. Jan. 26, 2015).

A duty to preserve is not triggered only at the onset of a potential claim or when litigation is imminent; the obligation to preserve evidence arises when the party has notice that the evidence may be relevant to future litigation. Id. Courts have found that a party reasonably should have anticipated litigation from the time it learned of the events giving rise to the

litigation, not only from the time a lawsuit was filed, threatened, or planned. See Bistrian v. Levi, 448 F. Supp. 3d 454, 469 (E.D. Pa. 2020). In spoliation case law, certain kinds of incidents are viewed as being especially likely to lead to litigation, including slip and fall cases. Courts have held that because they so predictably lead to a lawsuit, defendants can be expected to anticipate litigation soon after the event itself. Id. That does not mean the mere fact of a slip-and-fall is always enough to put the defendants on notice of litigation, but when combined with other factors, it is often enough to put defendants on notice that litigation was forthcoming. Id. Several factors affect this determination, such as the seriousness of the injury and the parties' prior relationship. Id. The parties conduct after the event can also shed light on whether the defendant should have anticipated litigation, as a plaintiff's statements or conduct might put a defendant on notice that litigation was likely. Id.

In this case, Plaintiff suffered serious injuries resulting from his slip and fall, leaving Harrah's in an ambulance and spending the night in the hospital. Aiello Depo. at 30:5-14. On the other hand, Plaintiff did not commence the civil action until over a year after the accident on October 8, 2020, initially told Harrah's security personnel his shoes made him fall, and frequented the casino roughly fifteen times between October 2019 and February 2020 (after his fall). Aiello Depo. at 42:4-8. However, given the severity of the injuries, coupled with the notion that slip and falls often spawn lawsuits, Harrah's had sufficient notice litigation was likely.

If litigation was foreseeable, then the inquiry hinges on bad faith. Spoliation requires more than negligence. Mack v. Pilot Travel Centers, LLC. No. 1:14-CV-00090, 2015 WL 9946411 (M.D. Pa. Dec. 22, 2015). In Mack, the defendant had an informal policy of saving twenty minutes of surveillance footage when an incident occurs, but only saved two fragmented videos considerably less than twenty minutes. Id. at *2. The court was unpersuaded by the

plaintiff's argument that the preservation of only some evidence "spoke volumes" regarding the defendant's culpable mindset. Id. The footage that was provided, which tracked the plaintiff through the store and confirmed his slip and fall, undermined the claim of any intentional spoliation. Id. In Mack, the court held the reason for less than twenty minutes of footage constituted negligence. Id. Destruction of evidence that occurs as a result of inadvertence, routine practice, or accident is not spoliation. Bozic v. City of Washington, Pa., 912 F. Supp. 2d 257, 273 (W.D. Pa. 2012). Most importantly, in Mack, the plaintiff never provided testimony from the individual who actually reviewed and exported the footage as to why only a certain amount of footage was preserved, such that this Court should infer bad faith on the part of the defendant. Mack, 2015 WL 9946411 at *4. In Mack, the plaintiff offered no evidence suggesting that the defendant purposefully chose to omit portions of the video, this leaving only speculation as to what happened. Id.

Where an establishment fails to preserve footage, despite requests to do so, a court may find spoliation. See Nixon v. Family Dollar Stores of Pennsylvania, LLC, No. 4:20-CV-00404, 2021 WL 2015188 (M.D. Pa. May 20, 2021). In Nixon, the defendant did not save any surveillance footage for the entire day of the accident, even though it was put on notice the day after the plaintiff's accident to save the footage. Id. at *7. The defendant had clear notice a lawsuit was coming, and yet allowed the footage to be re-recorded and destroyed. Id. The court found there was no justification for the store's failure to preserve the evidence, especially since the store had a video-retention policy dictating otherwise. Id. Thus, the court found the defendant acted in bad faith and spoliated evidence. Id.

Here, Harrah's may have been negligent in failing to preserve the hour's worth of footage, but Plaintiff has brought forward no evidence showing or giving rise to a reasonable

17

inference that Harrah's acted in bad faith. While it is true that both Moore and Shreckengost admitted it was standard practice to preserve the hour of footage, and that Dorian Price and Surveillance Supervisor Shakoor provided a sub-standard post-accident report by apparently not watching the footage before it was destroyed, this is insufficient. Shreckengost Depo. at 21:2-8. Plaintiff's argument is principally that Harrah's would have known of the hazardous liquid had it been adhering to its policies and procedures and that had the video been preserved it would show whether anyone spilled a liquid or created another dangerous condition. See ECF No. 19 at 13. This argument fails for a few reasons.

First, Harrah's informal policies do not correspond with its duty of care and actually provide greater protection to invitees. See Hower v. Wal-Mart Stores, Inc., No. 08-1736, 2009 WL 1688474, at *6 (E.D. Pa. June 16, 2009). A business will not face a penalty for failing to live up to a heightened, self-imposed duty of care. See id. Unlike Nixon, where the store failed to provide any footage despite requests from the plaintiff the day after the accident, Harrah's provided roughly a minute of footage prior to Plaintiff's fall and extensive footage after the accident, even though Plaintiff did not initiate this action until October 2020—over a year after his fall. This is akin to Mack, where the store had an unofficial policy of preserving footage, and they negligently failed to satisfy that self-imposed higher standard. Rather than malicious intent, the tape here was not saved because of "human error" that was not caught by the supervisor. Shreckengost Depo. at 21:6-7. Moreover, it was not an official, written policy of Harrah's to save the hour prior to fall. Id. at 24:7-19. Harrah's negligently failed to provide an hour's worth of footage, but it did provide footage of the atrium for roughly a minute prior to the fall, and followed Plaintiff until he left the premises. Moore Depo. at 18:5-23. There is a paucity of evidence the casino actively suppressed or destroyed evidence, especially under the

18

circumstances here as the Plaintiff reported that his shoes made him fall. Accordingly, the Court is unpersuaded that the Defendant spoliation evidence and should be precluded from contesting liability or subject to an adverse inference.

Additionally, Plaintiff did not provide any testimony from Dorian Price, the individual who was responsible for watching and recording the footage, as to why the full hour was not preserved, such that this Court could infer bad faith. Rather, the Court is left with speculations. Thus, a spoliation sanction is inappropriate due to the Harrah's lack of bad faith.

## V. CONCLUSION

Because no genuine disputes of material fact exist and Harrah's is entitled to judgment as a matter of law, the Court will **GRANT** Harrah's Motion for Summary Judgment. An appropriate order follows.

BY THE COURT:

/s/ Chad F. Kenney

_____

**CHAD F. KENNEY, JUDGE**